**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY W., individually and on behalf of A.W., a minor., | ) | |
| Plaintiff | ) | Case No. 1:25-cv-00903 |
| vs. | ) | Hon. John J. Tharp. Jr. |
| HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIELD of ILLINOIS, | ) | |
| Defendant. | ) | |

**BLUE CROSS AND BLUE SHIELD OF ILLINOIS'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Martin J. Bishop, 6269425
Rebecca R. Hanson, 6289672
Crowell & Moring LLP
300 N. LaSalle Drive, 25th Floor
Chicago, Illinois 60654
Tel: 312.321.4200
Email: mbishop@crowell.com
Email: rhanson@crowell.com

*Attorneys for Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois*

Pursuant to Federal Rule of Civil Procedure 52, Defendant Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company ("BCBSIL") respectfully moves this Court for judgment on Plaintiff Jeffrey W.'s ("Plaintiff") claim for benefits under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") and for violation of the Mental Health Parity and Addiction Equity Act ("Parity Act") as alleged in their Complaint ("Compl.") (ECF No. 1).

## I. INTRODUCTION

This case concerns coverage of inpatient mental health treatment A.W. received at Blue Ridge Therapeutic Wilderness ("Blue Ridge") from [redacted] 2021, to [redacted] 2022, and Solstice Residential Treatment Center ("Solstice") from [redacted] 2022 to [redacted] 2022. This case raises two issues, both of which should be resolved in BCBSIL's favor.

First, as to Count I, BCBSIL properly denied A.W.'s claim for benefits under Plaintiff's health plan ("Plan") because Blue Ridge is a wilderness facility and the Plan excludes such facilities from coverage. A.W.'s continued treatment at the residential treatment center ("RTC") level of care at Solstice was not medically necessary. BCBSIL approved 21 days of treatment at Solstice, during which time A.W. improved sufficiently to step down to a lower level of care. Plaintiff's procedural allegations (which BCBSIL denies) are irrelevant to this Court's *de novo* review, and do not create coverage the Plan does not provide.

Second, as to Count II, BCBSIL did not violate the Parity Act. The Plan's wilderness exclusion rests on a comparable standard applied to medical and surgical benefits, which also excludes primarily supportive care. Wilderness-setting services are also equally unavailable on the medical/surgical side through the Plan's exclusion of unlisted benefits. With respect to BCBSIL's medical necessity criteria, BCBSIL's medical necessity criteria are developed through identical

evidence-based processes for mental health and medical/surgical services, with no evidence of more stringent application to mental health claims. Finally, Plaintiff has not established an "as-applied" violation for either the Plan's wilderness program exclusion or its use of medical necessity criteria because he adduces no evidence that BCBSIL operates more restrictively against mental health benefits than against medical/surgical benefits with respect to either.

The Court should therefore enter judgment in BCBSIL's favor on both counts.

## II. FACTUAL BACKGROUND[1]

### A. The Plan Provides Specific Coverage.

The Plan provides that Covered Services are only "a service or supply specified in this Certificate for which benefits will be provided." PFF ¶ 11. The Plan covers mental health care on a continuum of intensity of services: inpatient hospital care (most intensive), RTCs (24-hour inpatient), Partial Day Treatment Programs ("PDTP") (five to eight hours per day, five days per week), and outpatient services including intensive and traditional therapies (least intensive). PFF ¶¶ 3-6. The Plan similarly covers medical/surgical services on a continuum from inpatient hospital to inpatient treatment in a Skilled Nursing Facility ("SNF") to outpatient care. PFF ¶ 7.

RTCs and wilderness programs are distinct. Under the Plan, an RTC is "a facility setting offering a defined course of therapeutic intervention and special programming." PFF ¶ 25. Wilderness programs, by contrast, "provide primarily a supportive environment and address long-term social needs." PFF ¶ 12. The Plan expressly excludes wilderness programs but provides that if an "appropriate Provider" (*i.e.*, a covered provider such as a licensed clinical social worker) delivered "[b]ehavioral health service[s]" at a wilderness program, those services could be covered

---

[1] BCBSIL incorporates the facts in its Proposed Findings of Fact ("PFF") filed contemporaneously and includes this brief recitation for the Court's convenience.

if they otherwise meet the Plan's terms. PFF ¶ 22.

Services for both mental health and medical/surgical conditions must be "Medically Necessary" — meaning the services are necessary to treat or manage a medical condition and representing the most efficient and cost-effective option "which can safely be provided." PFF ¶ 9. The Plan equally excludes any service that is primarily supportive, routine supportive care, or for personal comfort or convenience. PFF ¶¶ 21-24.

**B. A.W.'s Treatment at Blue Ridge.**

A.W. attended Blue Ridge Therapeutic Wilderness ("Blue Ridge") from [redacted] 2021, to [redacted] 2022. PFF ¶¶ 36, 45. BCBSIL determined that Blue Ridge did not qualify as a Covered Service under the Plan because it was a wilderness program and the Plan excludes such facilities from coverage. PFF ¶¶ 12, 21-22, 41. Plaintiff appealed, arguing that the wilderness exclusions carve-out for "Covered Services provided by appropriate Providers" applied and that Blue Ridge satisfied the Plan's Provider definition — while admitting Blue Ridge was not an RTC. Compl. ¶¶ 30, 40; PFF ¶ 42. Plaintiff argued that wilderness claims were "flagg[ed]" for automatic denial while medical/surgical claims were not. Compl. ¶ 36; PFF ¶ 42. On August 11, 2023, BCBSIL upheld the denial because Blue Ridge was a wilderness program, not an RTC. PFF ¶ 43.

**C. A.W.'s Treatment at Solstice.**

Following her treatment at Blue Ridge, A.W. was admitted to Solstice on [redacted] 2022; A.W. presented with a history of [redacted] and [redacted] and a [redacted]. PFF ¶¶ 45-53. BCBSIL evaluated medical necessity using the Milliman Care Guidelines ("MCG") for Residential Behavioral Health ("MCG for RTC"). PFF ¶¶ 13, 15-19. The MCG for RTC and its medical/surgical analogue for skilled nursing facilities ("SNF") are developed using identical evidence-based approaches, editorial processes, and evidentiary

standards. PFF ¶¶ 13-14.

Under the MCG for both RTC and SNF, care is medically necessary when symptoms are too intense for outpatient treatment but "intensive treatment and resources of licensed hospital are not anticipated." PFF ¶¶ 16, 31. For RTC to be medically necessary, a patient could either have symptoms that rise to a level that they are a danger to themselves or others, have "moderately severe" psychiatric or behavioral conditions, or "serious dysfunction in daily living" abilities, such as avoidance of nearly all social interactions or failure of all self-care. PFF ¶¶ 16-22. The MCG does not require full symptom resolution to warrant discharge; rather, it asks whether symptoms — including risk of harm and functional impairments — are absent or manageable at a lower level of care. *Id.* For SNF, the MCG similarly requires that the patient has "no acute hospital care needs," meaning that the patient is not acute enough for hospitalization, but is too acute for outpatient care. PFF ¶ 31, 33.

BCBSIL initially authorized coverage from [redacted], 2022 to [redacted], 2022, and then later through [redacted] 2022, because the symptoms Solstice reported at the time — [redacted] — required 24/7 RTC-level care and met the MCG criteria. PFF ¶¶ 16, 47-57. Solstice sought additional authorization on [redacted] 2022, but the information provided at that time indicated that A.W.'s symptoms had been at least partly historical and were currently manageable at a lower level of care. PFF ¶¶ 15-20, 55-62. Notably, A.W. [redacted] in over a year and, while at Solstice, she had become [redacted]. PFF ¶¶ 66-69. A.W. demonstrated [redacted] PFF ¶¶ 66-

73. A.W.'s medical records after [redacted] 2022 confirm that her symptoms did not require 24-hour monitoring and were exacerbated by being at Solstice. *See generally* PFF ¶¶ 67-78. From [redacted] through [redacted] 2022, A.W. consistently [redacted] PFF ¶¶ 67-73. A.W. committed to [redacted]. PFF ¶¶ 71-73, 75. Nonetheless, A.W. [redacted] which eventually diminished her engagement. *Id*.

From [redacted] through [redacted] 2022, A.W. struggled with [redacted] and [redacted] PFF ¶¶ 75, 76, 77. She twice reported that [redacted] thoughts. PFF ¶¶ 75-76. She continued to improve after home visits — so much so that her parents commented on the progress — and by [redacted] PFF ¶¶ 77-78.

Plaintiff appealed BCBSIL's denial of continued coverage. PFF ¶ 63. BCBSIL upheld its decision, finding that A.W. was [redacted] concerns warranting 24-hour care; her symptoms did not meet the MCG for RTC after [redacted] 2022. PFF ¶ 64. Plaintiff then requested external review through the Illinois Department of Insurance. PFF ¶ 79. The Independent Review Organization ("IRO") upheld the denial, finding that A.W. [redacted] PFF ¶¶ 79-81.

## III. LEGAL STANDARD

Rule 52 permits a trial on the papers in which the court weighs evidence, resolves factual disputes, and draws conclusions. *Oye v. Hartford Life & Accident Ins. Co.*, 140 F.4th 833, 836 (7th Cir. 2025); *Jones v. Unum Life Ins. Co. of Am.*, No. 24 C 3911, 2026 WL 96985, at *2 (N.D. Ill. Jan. 13, 2026). The Court conducts a *de novo* review, making an "independent decision" about Plaintiff's entitlement to benefits. *Dorris v. Unum Life Ins. Co. of Am.*, 949 F.3d 297, 304 (7th Cir. 2020) (citation omitted). Plaintiff bears "the burden of proving entitlement to those benefits" by a preponderance of the evidence. *Jones*, 2026 WL 96985, at *2 (citing *Oye*, 140 F.4th at 837).

## IV. ARGUMENT.

### A. BCBSIL Is Entitled To Judgment On Count I Because Plaintiff Cannot Establish His Entitlement To Plan Benefits For Either Blue Ridge Or Solstice.

Plaintiff cannot demonstrate that he is entitled to Plan benefits because Blue Ridge is not a service covered under the Plan, A.W.'s continued stay at Solstice was not medically necessary under the Plan's terms, and any alleged procedural errors are irrelevant to Plaintiff's claim for benefits. Accordingly, BCBSIL is entitled to judgment in its favor on Count I.

#### 1. Blue Ridge Fails to Satisfy The Plan's Definition Of An RTC, Rendering Its Services Ineligible For Coverage.

Plaintiff's claim for benefits under ERISA fails because he cannot show by a preponderance of the evidence that Blue Ridge qualified as a Covered Service under the terms of the Plan. *See Oye*, 140 F.4th at 837 (recognizing that plaintiff bears the burden of submitting records sufficient to demonstrate coverage, and that evidentiary gaps undermine the viability of a plaintiff's ERISA claim); *Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013). Plaintiff is entitled only to benefits expressly provided under the Plan. *Griffin v. TeamCare*, 909 F.3d 842, 845 (7th Cir. 2018) (citing *Clair v. Harris Tr. & Sav. Bank*, 190 F.3d 495, 497 (7th Cir. 1999)).

Blue Ridge does not qualify as a Covered Service under the Plan. The Plan covers inpatient mental health conditions only in certain settings, including hospitals and RTCs. PFF ¶¶ 3-5. The Plan plainly states that wilderness programs do not qualify as RTCs. PFF ¶¶ 5, 12, 21- 24. No other Plan term requires coverage for wilderness programs, and if a service is not expressly set out as a Covered Service, no benefits are available. PFF ¶ 11.

There is no reasonable dispute that Blue Ridge is a wilderness facility. PFF ¶ 36. Indeed, Blue Ridge, whose full name is "Blue Ridge Therapeutic Wilderness," is clearly a wilderness program based not only upon its name, but the fact that Blue Ridge submitted every claim with the revenue code 1006 (outdoor/wilderness behavioral health).[2] *Id*. As the court observed in *James D. v. Health Care Serv. Corp.*, "without some explanatory factual allegations, it defies reason to suggest that a program [with "Wilderness Therapy" in its name] offers a behavioral health service that is not a 'wilderness program.'" No. 1:25-CV-03681, 2026 WL 891868, at *2 (N.D. Ill. Mar. 31, 2026). Because the Plan excludes wilderness programs, Plaintiff's section 502(a)(1)(B) claim fails as a matter of law. *See Alice F. v. Health Care Serv. Corp.*, 367 F. Supp. 3d 817, 825-27 (N.D. Ill. 2019). The Court should enter judgment for BCBSIL on Plaintiff's Blue Ridge claim.

**2. A.W.'s Continued Stay At Solstice Was Not Medically Necessary And Therefore Was Not Covered Under the Plan.**

Plaintiff's ERISA claim with respect to Solstice fails because he cannot show by a preponderance of the evidence that A.W. required RTC-level care after [redacted] 2022. *Jones*, 2026 WL 96985, at *2-3. Plaintiff must demonstrate that [redacted]

---

[2] The Court may take judicial notice of insurance revenue codes. *See Mays v. Dart*, 974 F.3d 810, 824 (7th Cir. 2020) (*citing United States v. De La Torre*, 940 F.3d 938, 952 (7th Cir. 2019) (judicial notice is appropriate for facts not subject to reasonable dispute and capable of accurate determination through sources whose accuracy cannot be questioned); Noridian Medicare, Revenue Codes (last updated Feb. 12, 2026), https://med.noridianmedicare.com/web/jea/topics/claim-submission/revenue-codes (explanation of insurance revenue codes, including that 1006 is for wilderness programs and 1001 is for RTCs).

[redacted] PFF ¶¶ 16-19. The record does not support such a finding and any gaps in the record cut against Plaintiff. *Oye*, 140 F.4th at 837.

Here, the record demonstrates that A.W.'s symptoms no longer required 24-hour monitoring after [redacted] 2022. BCBSIL appropriately authorized coverage through that date based on the information Solstice provided about A.W.'s condition – some of which turned out only to be information from prior to her admission – including her experience with [redacted] PFF ¶¶ 45-57.

By late [redacted] 2022, however, Solstice's own information made clear that A.W.'s condition was appropriate for step-down. Specifically, A.W. had [redacted] — the prior information was historical and was not reflective of her current condition. PFF ¶¶ 47, 51-53, 55-58, 60, 62, 64, 66-69. A.W. was [redacted] *Id*. She demonstrated [redacted] PFF ¶¶ 59, 60, 62, 66-69. The MCG discharge criteria do not require symptom-free status; they require that danger to self or others be absent or manageable at a lower level of care and that functional status follow suit. PFF ¶ 16. Here, A.W.'s symptoms were not so severe as to justify continued RTC. *See also Oye*, 140 F.4th at 837.

A.W.'s condition from [redacted] through [redacted] 2022 only reinforced BCBSIL's denial. She did not [redacted] PFF ¶¶ 67-77. Her only [redacted], and she expressly attributed

them to her continued placement at Solstice rather than any underlying clinical condition. *Id.* Importantly, she did not act on those thoughts. *Id*. Moreover, Solstice expressed no clinical concern and made no treatment changes. *Id*.

Critically, the MCG provides that symptoms used to determine treatment intensity must be "due to the underlying behavioral health diagnosis or represent factors that contribute to destabilization of the underlying diagnosis." PFF ¶ 18. A.W.'s Solstice-induced symptoms do not satisfy that standard. To the contrary, A.W. consistently improved after home visits, so much so that her parents commented on it — and the MCG recognizes this circumstance as warranting decreased intensity of treatment, noting that "some patients may find higher levels of service intensity so restrictive as to be burdensome and hinder recovery." PFF ¶¶ 19, 77, 78. Courts have consistently held that distress caused by an RTC does not establish medical necessity. *See C.T. v. BlueCross BlueShield of Illinois*, 23 CV 6112, 2025 WL 4092204, at *8 (N.D. Ill. Apr. 17, 2025); *L.C. v. Blue Cross & Blue Shield of Tex*., 2:21-cv-319, 2023 WL 1930227, at *15 (D. Utah Feb. 10, 2023); *Christina M. v. United*, 22 C 0136, 2024 WL 4534687, at *13 (D. Utah Sept. 23, 2024).

Under both the Plan's Medical Necessity definition and the MCG discharge criteria, BCBSIL's denial of continued coverage beyond [redacted] 2022 was correct. PFF ¶¶ 58-62. Importantly, A.W.'s symptoms were far less severe than those in cases where courts held RTC placement not medically necessary. *C.T.*, 2025 WL 4092204, at *8 (patient had outbursts of aggression and harmed animals); *L.C.*, 2023 WL 1930227, at *15-16 (patient had homicidal ideation); *Christina M.*, 2024 WL 4534687, at *13 (patient had hallucinations).

In short, the clinical record here does not support medical necessity of RTC-level care beyond [redacted] 2022. *See Mike G. v. Blue Cross Blue Shield of Tex.*, 2:17-CV-347, 2019 WL 2357380, at *14 (D. Utah June 4, 2019) (record showed substantial progress and no evidence of

continued medical necessity); *Christine S. v. Blue Cross Blue Shield of N.M.*, 2:18-cv-874, 2021 WL 4805136, at *5-6 (D. Utah Oct. 14, 2021) (same); *J.M. v. United Healthcare Ins. Co.*, 21-CV-6958, 2023 WL 6386900, at *6-8 (S.D.N.Y. Sept. 28, 2023) (same). The Court should enter judgment for BCBSIL on Count I as to Solstice.

**3. Any Procedural Error is Irrelevant to This Court's *De Novo* Review.**

To the extent Plaintiff argues that BCBSIL failed to provide a "full and fair review," that argument is irrelevant under *de novo* review. *See* Compl. ¶¶ 70-71, 74. The Court independently examines entitlement to benefits, rendering any alleged procedural deficiency beside the point. *Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 328 (7th Cir. 2012) ("[W]hether the plan administrator gave the employee a full and fair hearing or undertook a selective review of the evidence is irrelevant."); *Alice F.*, 367 F. Supp. 3d at 824 n.3; *C.T.*, 2025 WL 4092204, at *2. Nor can Plaintiff create benefits the Plan does not provide by raising procedural errors — ERISA protects only "contractually defined benefits." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830 (2003) (citation omitted). The Court should enter judgment for BCBSIL on Count I.

**B. BCBSIL Did Not Violate the Parity Act**

Plaintiff alleges that BCBSIL violated the Parity Act with respect to both the Plan's wilderness program exclusion and BCBSIL's use of medical necessity criteria to deny coverage for A.W.'s continued stay at Solstice. Neither claim is valid, however, and this Court should enter judgment in BCBSIL's favor, as a result.

**1. BCBSIL Fulfills its Parity Act Coverage Obligations by Providing Inpatient Benefits for RTCs in Light of the Plan's Coverage of SNFs.**

Under Count II, Plaintiff's Parity Act claim — based on the Plan's wilderness program exclusion and BCBSIL's medical necessity criteria — fails as a matter of law. At issue are

nonquantitative treatment limitations ("NQTLs"), which restrict the scope or duration of benefits. 29 C.F.R. § 2590.712(a)-(c). NQTL comparisons must be made within the same benefit classification. *Id.* § 2590.712(c)(2)(ii)(A). The applicable classification here is inpatient, out-of-network care, where the Parity Act's implementing regulations identify RTCs and SNFs as analogous intermediate inpatient services. 78 Fed. Reg. 68240, 68246-47 (Nov. 13, 2013).

A facial Parity Act violation requires demonstrating no comparability between "the processes, strategies, evidentiary standards, or other factors" used to develop an NQTL for mental health benefits and those used for medical/surgical benefits in the same classification. 29 C.F.R. § 2590.712(c)(4)(i); *James D.*, 2026 WL 891868, at *4; *R.S. v. Quartz Health Benefit Plans Corp.*, No. 22-CV-418, 2026 WL 309629, at *10 (W.D. Wis. Feb. 5, 2026). An as-applied violation requires showing that a facially comparable NQTL is applied more stringently to mental health benefits. Plaintiff has established neither.

**2. The Plan's Wilderness Exclusion Complies With the Parity Act.**

As a threshold matter, the wilderness program exclusion does not violate the Parity Act. The regulations identify RTCs and SNFs as analogous intermediate inpatient services. 78 Fed. Reg. 68240, 68246-47. The Plan covers RTCs — fully satisfying its parity obligations — and Blue Ridge is not an RTC. The Plan says so expressly, classifying wilderness programs as a distinct category of facility. PFF ¶¶ 5, 12. Plaintiff himself admitted in his appeal that Blue Ridge was not an RTC. PFF ¶ 42. He cannot now recast Blue Ridge as a functional RTC for Parity Act purposes.

Even if the Court reaches the comparability question, the wilderness exclusion independently satisfies the Parity Act on two grounds. First, the Act requires comparability in "the processes, strategies, evidentiary standards, and other factors" used to apply an NQTL — not identical NQTLs on both sides. 78 Fed. Reg. 68240, 68245; 29 C.F.R. § 2590.712(c)(4)(i). The

Plan excludes wilderness programs because they "provide primarily a supportive environment and address long-term social needs." PFF ¶ 12. The Plan applies a comparable standard on the medical/surgical side, excluding "routine supportive care" and "any service primarily for personal comfort or convenience." PFF ¶¶ 23-24. Courts in this district have upheld this structure. *James D.*, 2026 WL 891868, at *5; *O.F. v. Health Care Serv. Corp.*, No. 1:25-cv-00127, 2026 WL 885184, at *5 (N.D. Ill. Mar. 31, 2026); *Alice F.*, 367 F. Supp. 3d at 828-29.[3]

Second, the Plan covers only "a service or supply specified in this Certificate" and excludes "[s]ervices or supplies that are not specifically mentioned in this Certificate." PFF ¶ 11. Wilderness-setting services are not mentioned as a Covered Service on the medical/surgical side and are therefore excluded. The exclusion thus operates equally on both sides — expressly on the mental health side, and through the catch-all on the medical/surgical side. *James D.*, 2026 WL 891868, at *5. There is no disparity.

The "appropriate Providers" carve-out in the wilderness exclusion changes nothing. The Plan defines "Provider" as an entity "duly licensed to render Covered Services." PFF ¶ 22. Wilderness program facility charges are not a Covered Service. An entity whose services are

[3] Cases to the contrary, including *Stephanie R. v. Blue Cross & Blue Shield of Illinois*, 815 F. Supp. 3d 809, 818 (N.D. Ill. 2025) and *Richard K. v. BlueCross BlueShield of Illinois*, No. 2:23-CV-491-TC, 2026 WL 883948, at *8 (D. Utah Mar. 31, 2026) are distinguishable. Both were decided at the pleading stage, where courts accept well-pleaded allegations as true — a standard with no bearing here. The uncertainty driving those decisions — specifically, how the plan administrator applied the challenged exclusion in practice — is fully resolved by the record here, where Plaintiff has adduced no evidence. *Richard K.* is further inapposite as it applies Tenth Circuit law. Moreover, *Alice F.*, 367 F. Supp. 3d at 828–29, *James D.*, 2026 WL 89168, at *5, and *O.F.*, 2026 WL 885184, at *5, are the better-reasoned and directly controlling authorities. These three decisions — all from this District — recognize that where a wilderness exclusion is consistently applied across both mental health and medical/surgical benefits, no Parity Act violation is found. Indeed, the *Richard K.* court itself acknowledged the continued vitality of *Alice F.*, noting that the case before it was distinguishable from *Alice F.* precisely because, unlike in *Alice F.*, the plan at issue in *Richard K.* provided no "information about why wilderness programs were excluded." *Richard K.*, 2026 WL 883948, at *9. Where, as here, the record supplies that explanation — and where the plan's exclusion is applied evenhandedly — the reasoning of *Alice F.*, *James D.*, and *O.F.* compels judgment for BCBSIL.

excluded from the Certificate cannot qualify as an "appropriate Provider," and Plaintiff's contrary reading would render the wilderness exclusion a nullity. *Schultz v. Aviall, Inc.*, 670 F.3d 834, 838 (7th Cir. 2012) (contract interpretation principles require plan provisions to be read "without rendering any term superfluous"). "Appropriate Provider," therefore, applies to providers expressly covered under the Plan, such as the enumerated professional providers, including licensed clinical social workers and other licensed therapists, as listed. PFF ¶ 22.

Plaintiff's allegation that wilderness claims are "flagg[ed]" for automatic denial based on revenue code fares no better. Compl. ¶ 36. Plaintiff adduced no evidence that BCBSIL applied this mechanism to mental health claims and not to comparable medical/surgical claims— precisely what an as-applied violation requires. *R.S.*, 2026 WL 309629, at *9-10 (an as-applied violation occurs "where a facially neutral provision of the plan is, in practice, applied disparately"). And Plaintiff's own allegation — that BCBSIL pays medical/surgical claims "as outlined in the terms of the Plan" (Compl. ¶ 83) — confirms that comparable wilderness-setting medical/surgical services are equally excluded by the catch-all. There is no differential enforcement.

Indeed, in *Vickie B. v. Anthem Blue Cross and Blue Shield*, No. 1:25-cv-3054-MLB, 2026 WL 146545, at *6–7 (N.D. Ga. Jan. 20, 2026), the court rejected plaintiff's theory that the plan categorically excluding facilities assigned a revenue code, holding that a third-party billing designation does not, in and of itself, constitute a "treatment limitation" under the plan, and that the exclusion was not categorical in any event because analogous medical and surgical facilities under the plan were also subject to similar limitations. *Id*. This Court should find similarly here.

BCBSIL is entitled to judgment on Plaintiff's Parity Act claim with respect to Blue Ridge.

**3. The Plan's Medical Necessity Terms Comply With the Parity Act.**

Plaintiff's Parity Act claim also fails because the Plan's medical necessity terms facially

comply. The Plan applies a single "medical necessity" definition to both mental health and medical/surgical services, requiring that, in the reasonable medical judgment of BCBSIL, "treatment … of a symptom or condition" and constitute "the most efficient and economical service which can safely be provided." PFF ¶ 9. The MCG for RTC and SNF are developed using identical evidence-based approaches, editorial processes, and evidentiary standards, and both assess whether symptoms require care more intensive than outpatient but less intensive than hospitalization. *Id*. ¶ 13. Because the same definition and comparable processes govern both sides, there is no facial violation. *See* 78 Fed. Reg. 68245; 45 C.F.R. § 146.136; R.S., 2026 WL 309629, at *9; *L.D.*, 684 F.Supp.3d at 1206.

Plaintiff asserts that BCBSIL "improperly utilized acute medical necessity criteria to evaluate the non-acute treatment that A.W. received." Compl. ¶ 85. This mischaracterizes the MCG. Both the MCG for RTC and SNF assess where symptoms fall along a continuum — too acute for an RTC or SNF, warranting hospitalization, or manageable enough to warrant step-down. *See* PFF ¶¶ 13-20. For mental health, imminent danger warrants hospitalization; more manageable risk warrants step-down. PFF ¶¶ 17-20. For SNF, care is appropriate where there are no acute hospital needs, but a less intensive program would be insufficient. PFF ¶ 31-33. Acuity plays the same role across both sets of criteria. *Michael M. v. Nexsen Pruet Group Med. and Dental Plan*, No. 3:18-cv-00873, 2021 WL 1026383, at *12 (D.S.C. Mar. 17, 2021).

BCBSIL did precisely what the MCG requires — it determined whether A.W.'s symptoms warranted continued RTC. Courts reject attempts to recast this inquiry as a binary acute/non-acute question. *See Kirsten W. v. California Physicians' Serv.*, 2:19-CV-710, 2025 WL 447890, at *18 (D. Utah Feb. 10, 2025); *L.C.*, 2023 WL 1930227, at *18-20; *Howard W. v. Providence Health Plan*, 652 F.Supp.3d 1293, 1312-13 (W.D. Wash. 2023). The Parity Act requires comparable

processes and standards, not identical language. *James C. v. Anthem Blue Cross & Blue Shield*, 2:19-cv-38, 2021 WL 2532905, at *20 (D. Utah June 21, 2021); *R.S.*, 2026 WL 309629, at *9. Because the MCG for both RTC and SNF require symptoms warranting 24/7 care and were developed through the same processes and evidentiary standards, there is no violation. *See* 78 Fed. Reg. 68245. BCBSIL's observations regarding A.W.'s risk level, coping skills, and self-care ability (PFF ¶¶ 61-62) reflect the standard MCG criteria applicable to any RTC or SNF/IRF determination and do not constitute a Parity Act violation.[4] *See L.C.*, 2023 WL 1930227, at *18.

Finally, Plaintiff offers no evidence of an as-applied violation. To prevail, he must show that BCBSIL applies medical necessity criteria more stringently to mental health benefits than to medical/surgical benefits. *See Brian J. v. United Healthcare Ins. Co.*, 667 F. Supp. 3d 1124, 1136 (D. Utah 2023) ("Plaintiffs have failed, however, to identify any evidence of how the Plan evaluates claims for analogous medical or surgical treatment in practice or even any evidence, apart from G.J.'s own experience, of how the Plan evaluates claims for mental health care at residential treatment centers in practice. 'Absent such evidence, Plaintiff's as-applied challenge necessarily fails.'") (citation omitted); *R.S.*, 2026 WL 309629, at *10; *L.C.*, 2023 WL 1930227, at *18-19. His failure to offer any comparison to the MCG for SNF is fatal. *See* 45 C.F.R. § 146.136(c)(4)(i); *City of Chicago v. Barr*, 961 F.3d 882, 911 (7th Cir. 2020).

## V. CONCLUSION

For the foregoing reasons, the Court should enter judgment in BCBSIL's favor.

---

[4] Plaintiff alleges that referring to A.W.'s condition as "vegetative" was inappropriate, Compl. ¶ 90, but BCBSIL did not make that characterization; the independent reviewer did. Compl. ¶¶ 64, 89.

Dated: August 21, 2026

Respectfully submitted,

By: */s/ Rebecca R. Hanson*

Martin J. Bishop, 6269425
Rebecca R. Hanson, 6289672
Crowell & Moring LLP
300 N. LaSalle Drive, 25th Floor
Chicago, Illinois 60654
Email: mbishop@crowell.com
Email: rhanson@crowell.com

*Counsel for Blue Cross and Blue Shield of Illinois*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2026, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service.

*/s/ Rebecca R. Hanson*
Rebecca R. Hanson